We want to welcome you here today and advise that when you stand at the podium you will please spray your virus all over us because we can't understand you if you're wearing a mask. We have three cases on the docket this morning. I suspect you're all quite familiar with our oral argument rules, but we would ask you to please adhere to the time limits, which means when the yellow light goes on you have two minutes left in your argument, and when the red light comes on you may stop speaking unless or conclude immediately unless you're answering a question from the court. We are familiar with the briefs and record excerpts in this case and the others. We have not necessarily read the entire record, so we do appreciate record citations when those are available. With that, we call the first case of the morning, Valdez Coria v. Garland, number 1960707. We'll hear from Mr. Craig. Good morning. May it please the Court, Parker Craig for Petitioner Hiran Valdez Coria. Your Honors, the heartbreaking facts in this asylum appeal are not in dispute. What is in dispute is a question of law, and the question is this. When conducting a past persecution inquiry into the government's willingness and ability to control non-state actors, must an immigration judge and the Board of Trustees center their analysis where the alleged persecution occurred, or can an IJ and the BIA conduct a nationwide analysis of the government's willingness and ability to control those particular non-state actors under review? Your brief and the government's sort of in the same box is pretty thin on authority for the proposition. You state the Fifth Circuit has some cases that the government's pointed out, but you state there really isn't any law in the circuit. Can you give us the always helpful Ninth Circuit citations to some proposition? Is that where we are, that this is a brand new issue for this circuit? This particular issue is one of first impression for this circuit. Our, I'm sorry, our law that we are citing are the regulations themselves, just the plain text of the regulations. And there are two places in those regulations that make very clear that an IJ and the BIA cannot presume relocation on the part of the individual seeking asylum during the past persecution inquiry into the government's willingness and ability to control non-state actors. The first place in the regulations, and that's the blue tab in your bench book, and it's offset with the 0813B1, Romanet 1, capital B. And that provision states that a decision-maker can exercise his or her discretion to deny an asylum claim based on past persecution when an applicant can avoid future persecution by relocating to another part of their home country and when under all of the circumstances it would be reasonable to expect them to do so. And that same two criteria, that a petitioner can avoid future persecution by relocating and that under all the circumstances it's reasonable to expect them to do so, that's the same test when an IJ or the BIA is conducting a well-founded fear of future persecution analysis. So the regulations make very clear that as soon as you are talking relocation on the part of the individual seeking asylum, those are the findings that you need to make. And a finding that the government is able and willing to control non-state actors in a distant part of the country does not capture those necessary relocation findings, particularly the reasonableness of relocation findings. And elsewhere in the regulations, it didn't get its own color tab, but it's the next page after the blue tab, and you'll see offset with the number three, the regulations... Before we get to that, we did receive a 28-J from the government regarding AB 3. Are we in agreement that that does not impact this case, or is there some part of AB 3 that you think is pertinent and supportive of your argument? No, I do not believe that AB 3 is pertinent and supportive of our argument, and that is because of the case Gonzales v. Barr in this circuit. And that case, as Your Honors are doubtlessly aware, stated that there is no actual difference between the completely helpless and condoning standard that was articulated in matter of AB that has been vacated. That is the same test as willing and unable. That is the same test as having more than difficulty controlling private behavior. So for that, for those purposes, that is why we do not respond to the government's letter. We don't disagree with it. There is another... Let me ask you a question, though. You say, I mean, you're taking as an assumption that it was proven that the local authorities wouldn't prosecute. The I.J. didn't find that, did she? So the I.J. Yes or no? The I.J. did not... All right, number one. Number two, please identify for us the exact nature of the complaints they made to the local police. Maybe I'm misremembering the record, but I thought the record was that they may have complained once and then they got abused again. I'm not sure. But they told the I.J., or this one told the I.J., I didn't complain again because I knew they wouldn't do anything. That is correct. They did not complain to the local police about the incident of past persecution under review. They did not file a complaint at all until they fled to Tijuana. Tijuana, right. So how can... So your whole argument is based on a fact that doesn't exist in the record. Respectfully, Your Honor, there is not a requirement that an individual must have reported a particular incident of past persecution and be able to demonstrate that the government did not act on that particular act. Well, I don't know how else you make proof. Well, so this... This kind of argument is coming up from all over the world right now. And, you know, if you live in New York City today or in Chicago, it is likely the government can't protect you either. So it's very difficult to credit this kind of argument without some real facts in the record. Matter of S.A., the B.I.A. presidential case has stated that an individual does not have to demonstrate a failure of state action in response to a particular incident of past persecution when the person seeking asylum may be compelled to return to their domestic situation and their circumstances may well have worsened as a result of that complaint. And in this circuit, that test, that matter of S.A. test... But again, an assumption is not a substitute for proof. So if you'd give me matter of S.A. just so I could read it, that would be very helpful. But I dare say it probably says that the person doesn't have to say they complained to the police if there is country conditions at the very minimum or some kind of information in the record as to why the locals won't protect them. So there is a great deal of information in this record. I would direct your honor to ROA 482 and 483. Interestingly enough, that was the sole piece of evidence that was proffered by the government in support of its willing and able argument. And it is a newspaper article about the arrest of a high-ranking cartel member who had infiltrated the police. Now that arrest occurred in 2010 and he was sentenced in 2018. That article stated that the La Familia cartel that attacked Mr. Valdez Correa was known as being one of the most violent cartels in all of Mexico. And again, no reasonable individual reading that article in 2018 about this high-ranking cartel member who had successfully infiltrated the police in Morelia and had been arrested for such, no reasonable individual reading that would say, oh well, that is the only person that infiltrated the police from the cartel. Mr. Valdez Correa's testimony was accepted as entirely credible and he spoke at length about the horrors inflicted upon the citizens of Morelia by this cartel. You can look at, that's 504, that is record 504, that is his discussion of that. And again, you know, I also would direct your honors to the IJ's own assessment of the threat facing Mr. Valdez Correa in Morelia. He said, now this is the red tab and this is the very first box on the red tab. If you'd like to see exactly what the IJ said, he said, why would he still be at risk of returning? He said, well I can tell you why he'd still be at risk, because these IJ's said that they would come and they would assault him. I won't use his example. How long ago did this assault occur? It occurred in 2017. So you're saying four years later they're going to identify these fellows and come after them? Well, they will, they are absolutely able to identify them because after the rape and assault of Mr. Valdez Correa and his partners, which by the way did occur in their own home, they were accosted at gunpoint and forced to take the attackers to their own home. And the attackers also obtained some bills. They grabbed some of their electricity bills and they said, oh well now we know who you are and you are the property of the La Familia cartel. And if you tell anybody... I know that, but I'm just assuming, you know, I suspect people in the cartel, you know, a reasonable observer would say that they probably change their employees or their members from time to time and to assume that four years later something is going to happen is sort of extreme. I believe the IJ made that very assumption, Your Honor, and that is one of the reasons why he said, you know, I believe that Mr. Valdez... I'm sorry? Wasn't it a she? I believe it was a he. Richard Walton. The lawyer was a she, excuse me. That's correct. And, you know, that is why during the hearing the IJ said, I find that Mr. Valdez-Correa has a well-founded fear of returning to Morelia. As Your Honors are doubtlessly aware, a well-founded fear, that is a term of art in asylum law that encompasses a objective reasonableness and a subjective reasonableness to that fear. So the IJ found in Morelia that Mr. Valdez-Correa had a well-founded fear of the La Familia cartel and he found that based upon the evidence that was put forth in the record and based upon the testimony that he accepted as fully credible. I would also direct Your Honors to record site 648 and that discusses the... Your Honors might be familiar with the deal, the macabre deal that cartel members will make with the police where they say silver or lead and that is you accept this bribe or we will murder you. And that is what the La Familia cartel does in Morelia that is there in the record. So again, what we have from the IJ is pretty clear findings that he did think that the government in Morelia was willing to protect Mr. Valdez-Correa if they could. I don't dispute that. You will note that he made the findings about there being gay bars in Morelia and you will note that he did cite that article about the arrest. Your time is running short and I want to bring you back to something I think you were about to touch on or maybe you did at the outset. The finding that that locale was one that they could not return to, that the petitioner could not return to is one component of finding persecution. Isn't the issue whether or not the petitioner would also have to show that he could not return to the entire country or whether he could be relocated in the country and whose burden it is to show that? Isn't that the nub of the matter here? Your Honor is entirely correct that it is. And the reason that it is the nub of persecution has been found in this case and has never been disputed. But it sounds like the IJ didn't find that to be the case because aren't there a couple of occasions where he says, well, I think that you're short on this or you haven't gotten, it's not enough, that you haven't proven, isn't that? So his finding is that they're not persecuted as a matter of law because they are not. And I apologize if I was unclear in what I was saying earlier. The undisputed elements are that Mr. Valdez Correa is a member of a particular social group, that he suffered a level of harm, all that stuff. What is your best case for the burden shifting that you argue in the brief, that it's the government's burden to prove that he can live elsewhere? The best case, it's the regulation itself. This is a matter of first impression and I'm not able to point to a circuit that says that. That particular provision... Has any other circuit so held? Not on the burden shifting provision specifically. I did note the Ninth Circuit case that said that the past persecution inquiry into the government's willingness and ability to control non-state actors, that can be satisfied with evidence from the local area. The reason that burden shifting, and that is the blue tab that is offset by the box number two, it says that when past persecution has been found, then the burden on internal relocation shifts to the government. And that burden shift, apart from there being no reasonableness findings, that burden shift never occurred. And to appreciate what happened here, the IJ and the BIA, I also don't want to neglect the BIA opinion, that's the yellow tab there, the only finding... You keep referring to tabs and I'm very confused. I'm sorry, Your Honor, I prepared a bench book. Do you see that might be there's a lot of papers there. Sorry. Of course. The only finding that the BIA made that spoke to this actual event, this past persecution event that was supposed to be under review, was seeking help in another jurisdiction. And what you have here are those findings that the government is able and willing to protect Mr. Valdez Correa 1,300 miles away from where the alleged persecution occurred. And because of that finding, and only because of that finding, the burden is on Mr. Valdez Correa to prove to the IJ and the BIA why he can't relocate there. Where, you know, obviously that is getting the order wrong, and that burden shifting provision makes very clear that those two inquiries are to occur sequentially. You must figure out past Thank you. All right, you have time for rebuttal. Thank you. Yes, sir. Mr. Hogan. Good morning. May it please the Court, Brennan Hogan for the government. This is a truly unfortunate case. There is no doubt about that. The petitioner has many sympathetic facts, but as the panel has already pointed out, the stumbling block for him is the unable or Could you speak up a little bit, please? Yes, Your Honor, which he did not surmount. It was his burden to show, and as the panel pointed out earlier, the authority is thin. Actually, it's not even thin. It's nonexistent to show that it's restricted to only what the local authorities will do for a petitioner in this case. The regulation is very broad, and it doesn't restrict the board or the immigration judge, as the Petitioner's argument about burden shifting before the BIA or the IJ. I don't think so, Your Honor. However, even if he had, it would have been of no merit, of no consequence. Well, if it wasn't exhausted, that's telling in our But aside from exhaustion aside, the regulations are clear. The burden does not shift until he has met all of the requirements to show a valid asylum claim on the past persecution issue, which includes showing unable or willing to be protected by the authorities. Mr. Hogan, you certainly seem to be correct from what we have found and what each able counsel has found, that the authority, whatever the level of visibility it is, it's thin. But that's your problem as well, it seems to me, is what does the regulation actually require? So let's look at the regulation. What is there that would allow us to hold, the Ninth Circuit notwithstanding, that you can look at the entire country to determine this issue? Well, it's two things, Your Honor. The regulation is broad. It just says the government, it doesn't specify or restrict or constrict the board or the agency in any way. I mean, we've had hundreds of cases where the and not just the, I mean, Guatemala, India, Southeast Asia, everywhere. I mean, that's always been an assumption. Maybe it was wrong. But again, Your Honor, the issue in this case wasn't the ability to relocate. That's a different part of the regulations. It's a different requirement that the petitioner would have to show. In your answer in light of what Judge Jones said, which would have been my next step, but we also need to talk about it in terms of current persecution, past persecution versus future. And I'm not sure how much of the case law that's already there is talking about making that initial asylum determination and how much of it applies to relocation for future persecution. Well, you're right. I mean, I'm not aware of anything else that you're saying. Maybe there's another part of the regulation you want to mention. I was just going to say, as we studied in our brief, in many unpublished opinions, this Court itself has not so constricted, as Petitioner suggests. This Court has looked at every level of government in a country of origin to see if a petitioner has shown that the authorities were unable or unwilling to protect him. And in this case, any futility argument, setting aside that that's not this Court's case law, he can't reasonably make an argument that reporting would be futile, given that even after the cartel took their identification and utility bill and all the things they could use to locate them, they still sought out help from the federal government. The only reason they didn't go through with it was their reticence. And while that's understandable, that doesn't show that the authorities were unwilling to protect them. What is the factual determination that you would say we should find in the IJ's decision on this without protection by the government, if he had stayed in his original city? I mean, the most, that was the question, and part of my concern about that, it seems to me, the most specific things the IJ said really concerns Tijuana and not his place of origin, and talks about Mexico City, even. So what do you find in the IJ's opinion that you would direct us to that makes a fact-finding on what we're talking about? Well, again, Your Honor, it's that he was pointing out that the authorities were willing to help him, regardless of whether they were in the locale or not. As Your Honor pointed out earlier, he never went to the local authorities in the first place, so you can't really make an argument that he showed that the local authorities and Morelia were unable and unwilling to protect him. And then he went to Tijuana, and there, while the state attorney general's office said, we are not going to get involved, it wasn't because we don't think your statutory protected ground is not worth protecting, it's that it's not our jurisdiction. This happened 1,300 miles away. You should go talk to them. He went to the federal attorney general in Tijuana, who said the same thing, like, this is not my office's responsibility, and that's when the Human Rights Commission came in and was willing to assist him. Is there, you know, are these fellows being persecuted? Yes, they're homosexuals, but are they being persecuted because of that, or because they are victims of a cartel that the government is unwilling to prosecute, and therefore they're no different than the businessman to whom the cartel says, you pay us X amount of pesos per month, or we're going to do something to you? I believe that the agency viewed it the first way, Your Honor, that it was that they were attacked because of their sexuality, not the latter. Well, I know that, but persecution has, the whole point of past persecution is you have to be a member of a particular social group who the government is unwilling to protect. I mean, if this were girls who were raped by the cartel and told they were going to be slaves of the cartel, wouldn't the government be equally unwilling, according to this, you know, this theme, to protect those women? That's a good point, Your Honor, but I don't think the panel would have to get there, because the government, regardless, the government expressed its willingness to protect him when the Human Rights Commission said, we will help you file a complaint, and going to counsel's point earlier about how pages 42 and 43 of the record show that the government can't protect him, it actually, it stands, it shows the opposite, that the government, this cartel, which is very dangerous, the government went out and arrested the heads. Counsel, tell me about the Human Rights Commission. It's mentioned of it in the record, and you've mentioned it a couple times as part of your argument. Is that a government-organized or sponsored organization? And the second part of my question is, what authority does it have? Is it an advisory authority, or does it have some type of working relationship with the government to process cases and enforce the law to some extent? Unfortunately, Petitioner really didn't develop or explain his what that office was going to do for him. It's only, I believe, in one page of his written statement, and it's only covered in one page of his testimony. The State Department report uses the acronym CONAPRED, I believe, and basically, it just, it is very vague that it's a Human Rights Commission, but I don't want to put words in the petitioner's mouth, but my understanding is that the commission was willing to take him to whatever relevant tribunal or authority to file a complaint about these people, but it is, it's not definitive, Your Honor. Does the panel have any other questions? The Governor rests on his briefs. Thank you. Thank you. Okay. I would like to answer Your Honor's question about whether this was addressed in the BIA briefing. It was. That is ROA 59 through 67. Thank you. And also 74. 74 is the burden argument, specifically, and 59 through 67 are our criticisms of the unwilling and unable analysis. When did your representation start in this case? We came on board at the BIA stage. We did not represent Mr. Baumgartner. Did he have counsel at IJ, in front of the IJ? He did have counsel, yes. He did have counsel. The, I just want to, you know, bring up a few points in response to what my colleague said. So, you know, the, he misinterpreted the, why he would still be at risk finding that the IJ made, and he said, well, he said that, oh, the authorities would be willing to help whether he said anything or not. That is, that is flatly not what the IJ said. The IJ said that the threat posed to him by the cartel, the actual verbal threat, was that whether you say anything or not, you are the property of the cartel in a sexual sense, and then if you tell anybody, we will kill you. I would also like to address, Judge Jones, your nexus question. So, the reason that a nexus was found here is because these, the four individuals in the truck, they pulled beside Mr. Valdez-Correa and his partner while they were holding hands, walking home from a movie, and then they started shouting slurs at them that I will not repeat in this courtroom, and also they found some vacation pictures. I have no doubt that these animals in the cartel were preying on them because they were gay, but the question is whether the government, whether you take it on a local or a national, broader basis, was unwilling to protect them because they were gay or because they're victims of animal cartel members who retaliate against the law enforcement authority. Well, and that is a good, and that is obviously a valid inquiry, an important one in this case, but obviously we also have to find ability, and that really is distinct from animus, ability to control, ability to protect them. So, in other words, we could concede. We are not conceding, but we could concede that the government does not hold such a high degree of animus towards Mr. Valdez-Correa and his partner that they are unwilling to attempt to protect him from the La Familia cartel because they're gay. We're not saying that. This is really a question of ability, and if you look at the IJ's findings, the Morelia-specific findings, then he does make some findings about the government's willingness that he, and the inability findings. Those are findings that he is still at risk and that he has a well-founded fear of returning to this place because of the credible threats made against him and his partner by the most violent cartel in that part of Mexico. One of the most violent cartels in Mexico, and again, that's according to the government's own evidence that was proffered in this appeal. That is why the Mr. Valdez-Correa had been persecuted. Let us recall, the inquiry here is was he persecuted, and you have the immigration judge saying in the oral decision, I find as a matter of law he was persecuted. He said one iteration of Mr. Valdez-Correa was persecuted or suffered persecution a total of nine times between the oral decision and the hearing, and I think that it is crystal clear looking at these findings that he believed Mr. Valdez-Correa had been persecuted in Morelia by the La Familia cartel. He believed that he had a well-founded fear of returning to Morelia, and he believed that the government was willing and able to control the cartel and to protect Mr. Valdez-Correa elsewhere in the country such as Tijuana, such as Mexico City. What about the judge's reference to Mexico News Daily article shows that the government is trying to arrest Familia Michoacana members? That's right. That was one of the two findings that he made specific about Morelia. That is a willingness finding. That is saying, sure, the government would like to be able to take down this cartel. It does not speak to the particularized, credible threat that was The government doesn't have any evidence that the government refused to protect him locally because he never made a complaint, so it seems to me it's hard for you to argue that the fact that they're trying to arrest members of the cartel somehow cuts in your favor. That's the amount of time may I add? Please do, yeah. Your Honor, respectfully, that is not the test. That is not the test that an individual has to demonstrate that a government was unable to prosecute and respond to a particular incident of past persecution. That would put Mr. Valdez-Correa in a paradigmatic catch-22 situation where, after receiving a credible threat, he could not receive asylum unless he reports that threat. Now, one of two things would happen. Either the government would be able and willing to or the government is unable and or unwilling to protect him and he ends up being slaughtered by the cartel members. Those are the two options that would happen here, and either way he would never be able to be granted asylum, which his partner was on these exact same facts. We know that when these regulations... All right, all right, all right. You're going from answering into a rating. I hope Your Honor wouldn't notice. All right, thank you very much.